HAMBRICK CONSOLIDATED et al.

v.

WALKER.

No. 6749.

Court of Civil Appeals of Texas.

Texarkana.

June 24, 1954.

Rehearing Denied July 15, 1954.

Cunningham, Cole & Southerland, Bonham, Malone, Lipscomb & Seay, Dallas, for appellants.

G. C. Butler, Bonham, for appellee.

WILLIAMS, Justice.

In the enlargement and improvement of the airport and its runways at Bonham, Texas, in June and July, 1951, appellee George L. Walker, the plaintiff below, furnished two large motorized earth-moving machines with attachments in the excavation and removal of earth on the project. C. N. Hambrick and L. N. Hambrick, a partnership d/b/a Hambrick Consolidated, also furnished various pieces of earth-moving machinery on the project. The project was bid in by the Hambricks. About the same time, appellee and the Hambricks bid in an earth-moving project in the construction of three dams near Jacksboro, Texas. Work proceeded on both deals along and about the same time. Litigants each also furnished earth-moving machinery on the Jacksboro project. Much of the evidence relates to both projects. A loss was sustained on the airport job.

The Hambricks assert here as in the trial court that the machinery used on both projects was furnished by the respective litigants pursuant to an oral contract under which each was to be credited for rentals under the A.E.D. rental code for the use of each piece of machinery furnished by the respective parties, and each was to share one-third in the profits. Appellee asserts

here as in the trial court that he furnished his machines that were used on both projects only on a rental basis.

The record is silent as to the profit or loss on the Jacksboro deal and no finding deals with that contract. Based upon findings of fact as filed, the trial court sustained the claim of appellee and awarded him judgment against the Hambricks and Travelers Indemnity Company, surety on a performance bond, jointly and severally for $3,768.86. In addition to the alleged rentals based on the A.E.D. code, this sum included $150 for hauling charges. The Hambricks and the indemnity company have perfected separate appeals.

The controlling issue presented is whether appellee furnished his machinery on a rental basis or whether he furnished same pursuant to a joint venture on a profit-sharing deal. Appellants vigorously assert under the points presented that the court's findings that plaintiff furnished his machinery on a rental basis agreement and did not furnish same pursuant to a joint venture profit-sharing agreement "are both so against the great weight and preponderance of the evidence as to be clearly wrong."

The Hambricks and appellee, owners respectively of earth-moving equipment had been associated together on previous projects. The Hambricks had entered a bid on the airport project and shortly before its award the litigants discussed that project at the time the three were calculating a bid to be made by them on the Jacksboro project. It was at such time in the latter part of May, 1951, according to the Hambricks, the three entered into an oral agreement on a profit-sharing basis as hereinbefore mentioned, in which the Hambricks were to assume the responsibility of finances and making the bonds. Appellee says they discussed such a proposition but declined such a deal because of lack of finances. He contends that in a third talk he reached an agreement with one of the Hambricks, under which the former agreed to furnish appellee's machinery on a rental basis. The conflict on their respective version of the agreement is irreconcilable and such con-

flict in the testimony given by the contracting parties in no way represents a misunderstanding.

The court's findings upon which the judgment is grounded rests solely upon the uncorroborated testimony of appellee. Other than this, appellee directs us to no fact or circumstance in support of appellee's asserted agreement and in our search we find none. In weighing various facts and circumstances and certain testimony given by appellee, which follows, we are in accord with appellants' claim that the court's findings are so against the great weight and preponderance of the evidence as to be clearly wrong.

Appellee's six trips in June, 1951, from either Dallas or Jacksboro to the airport project in Bonham when and where he sometimes spent a whole day discloses a greater material interest than merely "to check on my equipment to see that it was all right"—"to see the job was going on all right,"—"They were my operators." This explanation of such trips and the expense incurred incident thereto are not in accord with appellee's testimony that his relationship had been satisfactory and he had "no reason to believe they would misuse my equipment" or his further testimony that "the fellow who leases it has exclusive control of the equipment and is responsible for making repairs on it." According to J. D. Reynolds, a former employee of the Hambricks, certain alleged instructions given by appellee on one of his visits to the crew on the job created some confusion as to arouse an inquiry as to what authority appellee had to direct or interfere with the crew's method of doing the work; that on an occasion when appellee stopped "our maintainer operator and dozer operator", he told us "he was losing money on the job" and Mr. Hambrick told us that "he is one of the boys, third interest." When asked if he had exercised some supervision and direction over the job, appellee replied, "Mr. Hambrick asked me for some suggestions out there, we talked it over. I did. Yes, sir."

The itemized account of each project kept by Mrs. Hayden, the bookkeeper,

related by marriage to one of the Hambricks, reflects the various charges and credits made during the progress of the work. Such ledger sheets reflect various credits to litigants for use of machinery furnished by the litigants on each job. Appellee denied her testimony that he along with the Hambricks had instructed her to open and so keep the respective accounts. He denied that he had examined the books at any time as she insisted he did. He did admit that he had delivered to her a few times the weekly pay roll on the Jacksboro job and may have twice on returning from Bonham delivered to her the weekly pay roll on the airport job. According to her, appellee discussed with her a probable loss on the airport job because of bad weather. Other than as above pointed out, he sharply denied in detail the extensive alleged instructions, conversations and acts related by her.

Appellee's claim that he made a demand for payment for his alleged rentals in the latter part of June, again about July 15 and again about August 15, is flatly denied. He testified that when he asked for payment about September 1, they said "I lost money on their jobs and did not consider they owed me anything—seemed they blamed me for the dirt work on the jobs."

Invoices of several small purchases made by appellee and paid by him during the construction work period were introduced by the Hambricks. The ledger account reflects he was given credit for these items and for several pay rolls he paid at Jacksboro. It appears that a large piece of machinery was purchased by him. The books reflect an advance was made and charged to him. It is difficult to reconcile above purchases and transactions with a mere lease rental agreement.

 In the comment on points substantially as here raised, namely, "that the findings are both against the great weight and preponderance of the evidence as to be clearly wrong", the Supreme Court in King v. King, 244 S.W.2d 660, 661, terms the question presented here as one of fact, "not infrequently described as a question of

'sufficiency' of the evidence." And as further stated in the opinion, "the question requires the Court of Civil Appeals, in the exercise of its peculiar powers under the constitution and Texas Rules of Civil Procedure Nos. 451, 453, and 455, to consider and weigh all the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this, regardless of whether the record contains some 'evidence of probative force' in support of the verdict." "The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict." Including the authorities cited on page 661, 244 S.W.2d of the opinion in support of the holding, see Banks v. Collins, Tex.Sup., 257 S.W.2d 97, 100; Matlock v. Matlock, Tex.Civ.App., 245 S.W.2d 536. As observed in Aetna Ins. Co. v. Eastman, Tex.Civ.App., 72 S.W. 431, applicable here, "plaintiff depends solely upon his own testimony as a basis for recovery. He is not corroborated by a single witness or a single circumstance." And we here interpose the further observation that plaintiff had the burden of proof to establish his alleged straight rental agreement. For holdings of similar import see Missouri Pac. Ry. Co. v. Somers, 78 Tex. 439, 14 S.W. 779; International & G. N. Ry. Co. v. Brice, Tex.Civ.App., 111 S.W. 1094, and authorities cited on page 1097.

In the language of Missouri Pac. Ry. Co. v. Somers, supra, 14 S.W. at page 779, which we here adopt in the disposition of this appeal: "The appellee, as to the disputed facts, depended solely upon his own testimony, uncorroborated by any witness. Such being the evidence, we feel constrained to hold that the court below should have granted a new trial upon the motion of the defendant. Although this court has the power to review a case upon the facts, and to set aside a verdict which has evidence to support it, that power has been reluctantly exercised. But it is the right and duty of the court to set aside a verdict, when it is

against such a preponderance of the evidence, that it is clearly wrong. * * * There was no evidence to support his case but his own."

The conclusions above reached render it unnecessary to discuss the $150 hauling charge or the points raised by the Indemnity Company as to the alleged non-compliance of notice to fasten liability under the performance bond.

The judgment is reversed and the cause is remanded.