**J. N. CHANTLY, Appellant,**

v.

**Nick H. CHRYSTAL, Appellee.**

No. 15561.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 7, 1955.

Rehearing Denied Feb. 4, 1955.

Martin & Bailey and John W. Miller, Dallas, for appellant.

Saner, Jack, Sallinger & Nichols and H. Louis Nichols, Dallas, for appellee.

BOYD, Justice.

Appellee Nick H. Chrystal filed this suit against appellant J. N. Chantly, alleging that appellant employed him as assistant manager of a restaurant at a salary of $100 per week and had paid him only approximately $30 per week. Appellant denied that appellee was employed as assistant manager but alleged that he employed appellee as a waiter at a salary of $30 per week, and that appellee was given two meals per day and allowed to keep his tips. Appellant further alleged that during the course of such employment appellee appropriated funds belonging to appellant in excess of $5,000, and prayed that if any judgment should be rendered against appellant it be offset by the amount found to have been appropriated by appellee. Upon a jury verdict, judgment was rendered for appellee for $5,460 for salary and $750 for attorney's fees.

The jury answered "No" to the issue: "Do you find from a preponderance of the evidence that the plaintiff, Nick H. Chrystal, appropriated money belonging to the defendant, J. N. Chantly?" One of appellant's points for reversal is that this answer was so against the great weight and preponderance of the evidence as to require a new trial. We are compelled to agree with this contention.

The evidence is voluminous and we do not set it out in detail.

Among appellee's duties at the restaurant was that of buying and receiving from deliverymen cases of beverages and paying for them. The usual method of paying for beverages was to take money from the cash register and insert in its place a ticket furnished by the seller of the beverages. These tickets were dated, had serial numbers, showed the quantity and price of the beverages delivered, and credits, if any, for empty cases returned. A few days before

appellee's connection with the restaurant was terminated, there were found in the cash register some beverage sales tickets which appeared to have been altered by erasures having been made of the dates, and in some instances of the amounts, and with different dates, and in some instances different amounts written thereon. Appellant and his bookkeeper searched in the files for several days before and after appellee ceased to work at the restaurant and many more tickets were found which appeared to have been altered in like manner. In the files of some of the beverage companies were found some carbon copies of such tickets, which could be identified by the serial numbers, and by which it was established that the dates and some amounts had been changed. Thus it appeared that after the beverages had been paid for, money had been once again taken from the cash register in the amounts shown by the altered sales tickets. The total amount shown to have been withdrawn and replaced by the altered tickets was considerable. Appellee denied that he altered any tickets or appropriated any money.

Appellant testified that the letters and figures which appeared over the erasures on the sales tickets were in appellee's handwriting. Various specimens of appellee's admitted or alleged handwriting were introduced, including checks made payable to appellee and apparently bearing his endorsement, some of which he admitted that he endorsed, a sheet of figures made by him, and two time books allegedly kept by appellee. The time books purportedly recorded the time of various workmen who repaired appellant's restaurant building after two disastrous fires, the workmen being employed on the two occasions for a total of approximately five months. While the repairing was in progress, the restaurant was closed, but appellee remained on the payroll, drawing $30 per week. If it was not appellee's sole duty, it was one of his duties to keep the time of the workmen, and appellant paid them in accordance with the time kept by appellee. Appellee denied that he kept the time in the books.

Dr. Martin, a professional criminologist, who qualified as an expert in the examination of questioned documents, testified that the writing over the erasures on the mutilated sales tickets was done by the person who made the sheet of figures admittedly made by appellee; and that the person who wrote over the erasures also kept the time in the time books and endorsed a check which appellee admitted that he endorsed. Lupe Garcia testified that he worked in repairing the building for five months, and that appellee kept the time of the workers in the books; that he saw appellee marking the time in the books; that he saw appellee doing that almost every morning when he went to work; and that no one besides appellee kept the time. Domingo Garcia testified that he worked on the repair jobs; that appellee kept the time of all the workers; that every day he saw appellee with the books and with a pencil in his hand; that he saw appellee write witness' time in the books.

Land testified that he sold and delivered cases of beer to the restaurant; that appellee received and paid for them in cash; and that he made out sales tickets and gave them to appellee. He identified two tickets as being in his own handwriting, but which he said had since been mutilated by changing the dates and the amounts of the purchases. He said that at least on one occasion, and probably on more than one occasion, appellee asked him for blank tickets, and that he gave them to appellee. Welborne testified that he was route supervisor for a beverage company and had accompanied a deliveryman when five or six deliveries were made to appellant's restaurant, and that each time they dealt with appellee, who paid cash for the beverages; that they gave him sales tickets; and that on one occasion appellee asked them for a blank sales ticket, saying that he was a "percentage man" and wanted a ticket for the owner and one for his own files. Welborne said they gave him an extra ticket. Appellee denied that he ever bought beverages from Land, or had ever asked him for or received any extra tickets from

him; but we fail to find in the statement of facts where appellee denied the testimony of Welborne.

The time books contain hundreds of entries. According to those entries, the hours when workmen were engaged varied greatly from day to day. Beginning hours for different workmen, and for the same workmen on different days, ranged from 7:30 a. m. to 4:30 p. m., and quitting hours ranged from 12:00 noon to 9:30 p. m. Appellee admitted that he kept the time of the workmen, but he said he kept it in his mind. He denied that he made a single entry in the books. Indeed, he denied that he had ever seen the books until the trial. He admitted that the workmen were paid every Monday on the time kept by him, and he did not say that the time as shown by the hundreds of entries in the books was not correct.

There is nothing in the record to indicate that appellee possesses phenomenal powers of memory other than his statement about his method of keeping the time. We think that his testimony in that respect approaches the incredulous, if it does not stagger credulity itself.

■ It is this Court's duty to weigh and consider all the evidence in the case—that which supports the verdict and that which does not—and to set aside the judgment and remand the cause if we conclude that the verdict is so against the weight and preponderance of the evidence as to be manifestly unjust, regardless of whether there is some evidence of probative force to support it. Article 5, sec. 6, Constitution of Texas, Vernon's Ann.St.; Rules 451, 453 and 455, Texas Rules of Civil Procedure; In re King's Estate (King v. King), 150 Tex. 662, 244 S.W.2d 660; Banks v. Collins, Tex., 257 S.W.2d 97; Matlock v. Matlock, Tex.Civ.App., 245 S.W.2d 536; Hambrick Consolidated v. Walker, Tex. Civ.App., 269 S.W.2d 923.

■ The record includes hundreds of photostats of instruments, entries and signatures, the genuineness of some being admitted and of others being denied, and many enlargements of appellee's admitted and disputed handwriting. After a careful consideration of the exhibits and all the testimony in the case, we think the verdict was so against the weight and preponderance of the evidence as to require that the facts be reexamined. This disposition of the case renders it unnecessary to consider appellant's other assignments, which involve matters that may not arise on another trial.

The judgment is reversed and the cause remanded.