**C. R. WILKIE, d/b/a Wilkie Lumber Company, Appellant,**

v.

**J. E. DEAN, d/b/a Dean Lumber Company, Appellee.**

**No. 6862.**

Court of Civil Appeals of Texas.

Texarkana.

March 1, 1956.

Rehearing Denied April 12, 1956.

Power, McDonald & Mell, Gilmer, for appellant.

Florence, Florence & Garrison, Gilmer, for appellee.

DAVIS, Justice.

C. R. Wilkie, d/b/a Wilkie Lumber Company, sued J. E. Dean, d/b/a Dean Lumber Company, alleging a breach of an oral contract made by defendant with the plaintiff to deliver to plaintiff, or his order, oak lumber of a certain size, thickness and specifications. Plaintiff took the position in the trial court and takes the position in this court that the contract was for oak lumber 3 x 4 inches planed to 2¾ x 3⅝ inches, and that defendant delivered to plaintiff 60,752 feet of oak lumber under such contract which was planed to 2⅝ x 3⅝ inches. There was no specific length for such lumber and no question of lengths is made.

The defendant filed a cross-action for a balance which he claimed to be due him by the plaintiff for other lumber sold to the plaintiff. The parties will be referred to as Wilkie and Dean.

Trial was before the court without a jury. Judgment was that Wilkie take nothing, and that Dean recover on his cross-action. The trial court filed findings of fact and conclusions of law, and refused to make other specially requested findings of fact as requested by the plaintiff. Wilkie has appealed.

■ There may be some doubt that this court has jurisdiction of this appeal, because the attorneys of record signed the appeal bond in this case without the written consent of the trial court in violation of Rule 142, T.R.C.T., but as pointed out in a recent opinion by this court, Morton v. Morton, 286 S.W.2d 702, the defendant has made no objection to the bond, and more than 30 days having passed, such error, if any, may have been waived. See Rules 430 and 431, T.R.C.P., and authorities cited under each Rule, which make liberal provisions for perfection of records on appeal. If attorneys desire to sign such bonds, it would be very easy for them to get the written consent of the court to do so. It can be easily understood why opposing counsel,

out of courtesy to fellow members of the bar, would decline to raise such errors.

Wilkie brings forward 58 points of error. These points are divided into three groups. In the first group he complains of the trial court's findings of fact because: (a) There is no evidence to support said findings; (b) the evidence is insufficient to support said findings; and (c) said findings are so contrary to the great weight and preponderance of the evidence as to be manifestly unjust and wrong.

■ These challenges by Wilkie have necessitated a careful examination of the entire statement of facts. As pointed out in the recent case of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661:

"* * * The question requires the Court of Civil Appeals, in the exercise of its peculiar powers under the constitution and Texas Rules of Civil Procedure Nos. 451, 453, and 455, to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this, regardless of whether the record contains some 'evidence of probative force' in support of the verdict. See cases cited supra. The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict."

The King case was tried with a jury, but the same rule applies to cases tried before the court without a jury. As we view the law, quite a responsibility rests upon the Courts of Civil Appeals in such cases, and we have tried to discharge our duty by carefully examining and analyzing the testimony and evidence in this case.

■ The sole complaint of Wilkie in this case is that the 60,752 feet of oak lumber delivered by Dean to Wilkie was only 2⅝ inches thick when it should have been 2¾ inches thick. Dean denied that such

lumber was to be of the thickness contended by Wilkie, and contended that it was cut and surfaced in accordance with the standards and customs of the lumber industry. The trial court found that said lumber was so cut and surfaced, and if there is evidence sufficient to support such finding, and the finding is not so contrary to the great weight and preponderance of the evidence as to be manifestly unjust and wrong, the judgment of the trial court must stand.

The statement of facts in this case contains 320 pages of testimony and exhibits. We shall summarize the evidence as briefly as we can and as we find it to be.

Wilkie was what we would term a broker in the lumber business, and resided at Ringgold, Louisiana. Dean was a manufacturer of lumber at Gilmer, Texas. Wilkie had received an order for about 60,000 feet of oak lumber from Malvern Wood Products Company, a corporation, at Malvern, Arkansas, sometime in March or the first of April, 1952. He went to Gilmer in search of such lumber and located same at Dean's mill. On April 7, 1952, Wilkie placed an order with Dean for approximately 60,000 feet of 3 x 8 SSE (sound, square-edge) oak. Wilkie contends that on April 10, 1952, he reordered this lumber by written order mailed from Ringgold, Louisiana, to Dean at Gilmer, Texas, with instructions that the 8-inch lumber be sawed to 3 x 4 and that the 3 x 4's be dressed S4S (smooth 4 sides) to 2¾ x 3⅝ inches. Dean denies receiving such written order but contends that Wilkie called him by telephone one or two days after the original order was given and instructed him to saw the 3 x 8's to 3 x 4's and to plane them S4S, standard measure, and to deliver the lumber at Malvern Wood Products Company, Malvern, Arkansas. Wilkie denied that there was any instruction except as contained in written order dated April 10, 1952.

It was Wilkie's contention that he had carried a Mr. Percival, Secretary-Treasurer of Malvern Wood Products Company, to Gilmer to examine the lumber before any order was ever issued and that Dean was informed that the purpose for which the lumber was to be used had to be a *special* thickness and that the thickness was critical to the purpose for which the lumber was being bought. Dean denied that he ever received any such instructions.

On April 14, 1952, Dean delivered five truckloads of oak lumber, 3 x 4's dressed to 2⅝ x 3⅝ inches at Malvern Wood Products Company, Malvern, Arkansas. The Mr. Percival who Wilkie claims came to Gilmer and inspected the lumber before the order was placed, received the lumber at Malvern Wood Products Company, for Wilkie, according to instructions, and according to his testimony he measured some of the lumber for thickness before it was unloaded and found it to be ⅛ of an inch less than the required thickness. There is no showing that Percival made any statement to either of the truck drivers at the time the lumber was delivered about the ⅛-inch deficiency in thickness thereof, so far as the record is concerned, but signed the tickets and accepted the lumber.

On April 19, 1952, two more loads of lumber were delivered at Malvern Wood Products Company of the same dimensions, 2⅝ x 3⅝ inches. Percival checked this lumber for thickness and accepted it. At the time each of the seven loads of lumber was delivered at Malvern Wood Products Company, Percival signed a ticket acknowledging receipt of each separate load of lumber.

On the same day the last two loads of lumber were delivered at Malvern Wood Products Company, Dean attached the seven shipping bills to an invoice and billed Wilkie for a total of such shipments at Ringgold, Louisiana. On April 23rd, Wilkie mailed his check to Dean for the sum of $4,252.64 in payment of said seven loads of lumber.

Wilkie contends that he had no notice whatever that the lumber delivered in April was not the required thickness until after he had mailed his check. He testified that he was contacted on April 24th or 25th and that he immediately called Dean. There is no evidence that he attempted to stop payment on the check. The cancelled check was offered in evidence, but the court re-

porter failed to copy the date of payment; therefore, we do not know whether Wilkie had time to stop payment on the check, but we are inclined to think that he did. The record of the check shows that it was endorsed: "For deposit only, Dean Lumber Company," and Dean's testimony shows that the check was received by him on April 24, 1952.

Wilkie contends that he contacted Dean several times after the April deliveries of lumber. On May 6, 1952, Wilkie delivered to Dean an order for 3 x 4 oak lumber, S4S, dressed to 2¾ x 3⅝ inches to be delivered at Malvern Wood Products Company. On May 14, 1952, Dean delivered two truckloads of such lumber at Malvern Wood Products Company which totaled 8,836 feet. Percival signed a ticket for each load of such lumber. Shortly after the delivery of lumber on May 14th, Wilkie contacted Dean and informed him that Percival contended that some of the two truckloads of lumber delivered on May 14th was not the 2¾ inches required thickness and was insisting on an adjustment. Dean agreed to an adjustment on the last two loads in the sum of $161.57, leaving a balance due on the two loads of $462.95. This is the amount for which defendant filed his cross-action. Dean testified that the first time anyone said anything to him about an adjustment on the April deliveries was in June, 1952.

Wilkie testified that Percival, or Malvern Wood Products Company, could not use any of the first seven truckloads of lumber as 3 x 4's, but that they would accept them as 2 x 4's, which would reduce the footage by one-third, and $20 per thousand less than the price of 3 x 4 and that Dean agreed to a settlement of the difference on that basis. Dean emphatically denied any such adjustment or agreement and offered other testimony to corroborate his position. Wilkie contended that Dean said that he, Dean, did not have any money to refund the difference, but that he would let Wilkie have some more lumber instead. We think that this contention on the question of such adjustment being made is impeached by Wilkie's own actions and conduct. We are unable to ascertain the definite time at

which Wilkie contends the agreement was made, but it seems to be not later than May 6, 1952, and either at or prior to the time the last order for more lumber was placed by Wilkie with Dean. Then, Wilkie never at any time contended, even up until time of trial, that the two truckload deliveries of lumber in May were to be a part of the lumber he was to get in the settlement. Wilkie did claim in his suit to be giving Dean credit for the lumber delivered in May, but admitted that he owed Dean for the May deliveries and sought to credit that amount on a claimed shortage in the April deliveries.

Three of the truck drivers who delivered the lumber at Malvern Wood Products Company testified in the case, and each testified that Percival checked the lumber. They further testified that at the time they started unloading the lumber the employees of the Company started loading some of the lumber on buggies, hauling it into the plant and sawing it up. One of the truck drivers who made one of the April deliveries testified that he delivered a load on May 14, 1952, and that there was less than half a load of lumber remaining at the place where a minimum of two loads of lumber were unloaded in April. Percival testified that he did not check either load of the lumber at any time for the total footage delivered by each truck, yet he was willing to accept the April deliveries on a total footage basis as 2 x 4's and at $20 less per thousand; and Wilkie was and is still willing to do likewise. We think that when the testimony of Percival and Wilkie, the plaintiff, is carefully analyzed, it can readily be seen why the trial court was not impressed with same. As we view the testimony and evidence in the case, we think the greater weight of the evidence is in favor of Dean.

We were concerned about the contention of Wilkie relative to the thickness of the lumber ordered, but we have concluded from examination of the "National Hardwood Lumber Association Rules" offered in evidence and explained, that the standard measurements of 3 x 4's dressed to S4S would be to reduce them to 2⅝ x 3⅝; and that the standard measurements 3 x 4's

dressed to S2S would be to reduce them to 2¾ x 4. Wilkie himself testified that the lumber he was seeking was to be a "special" thickness. Plaintiff's witness Percival testified that the 2¾ thickness was a critical requirement for the purpose for which he ordered the lumber. Dean offered a Mr. T. C. Ehmann, a man with 50 years experience in the lumber business, who testified that the standard measurements of 3 x 4 oak lumber dressed to S4S was 2⅝ x 3⅝.

We think the evidence fully supports the findings of the trial court on all points complaining of the trial court's findings on the evidence, and they are overruled. 3-B Tex. Jur. 457, sec. 941, and authorities therein cited.

By another group of points Wilkie complains of the conclusions of law. What we have said about the evidence supporting the findings of the trial court disposes of these points, and they are overruled.

By other points Wilkie complains of the action of the trial court in finding that Percival was the agent of Wilkie. The testimony upon the trial of the case shows that Wilkie admitted that he instructed Dean to deliver the lumber in question to Percival at the Malvern Wood Products Company. The testimony further shows that Wilkie knew Percival to be a man with many years' experience in the lumber business and fully capable of understanding the nature of his acts and also knew and understood before shipment of any lumber the exact kind of lumber that Wilkie had ordered shipped. The testimony further shows that Percival was the secretary-treasurer of Malvern Wood Products Company and that he measured some of the lumber before it was unloaded and had ample opportunity to fully inspect the same for any and all defects. As above stated, he signed the freight bills showing shipment to Wilkie; and Wilkie, upon receipt of an invoice with those tickets signed by Percival for the April deliveries attached, paid the bill.

Although there is testimony to the effect by Percival and Wilkie that Percival was not the agent of Wilkie, we have concluded from all the facts that a relationship did exist between Wilkie and Percival sufficient to constitute them a principal and agent, whether they understood it to be, or intended it to be, or not. 2 Am.Jur. 26, sec. 24. An agency can be created in different ways. An agency by estoppel, ratification, and adoption. An agency in such manner is fully discussed in 2 C.J.S., Agency, §§ 29–50, incl. pp. 1062–1106. We conclude that Percival was the agent of Wilkie and was acting within the scope of his apparent authority at the time he received, inspected, and accepted the lumber in question. 2 T.J. 425, sec. 439. Although Wilkie testified that Percival was not his agent, he admitted upon the witness stand that the lumber was to be delivered to Percival, secretary and treasurer of Malvern Wood Products Company, and he did not deny Percival's right to receive it and to sign the tickets. Having recognized such authority in Percival, whether he was an agent or not, Wilkie is estopped to deny the authority of Percival and is bound thereby. Dean had every right to believe in and to rely upon the acts of Percival. The points are overruled.

As a further defense to Wilkie's cause of action, Dean pleaded estoppel in the trial court and the trial court found the facts to be, from substantial evidence, that Wilkie was estopped to assert any damages because of an alleged deficiency in the thickness of the lumber delivered in April. Percival being in a position to understand and appreciate the critical thickness required of the lumber and having noted the deficiency in thickness before the lumber was unloaded, and having failed to reject the same, we feel that the complaint, if any, is between Percival and Wilkie. It was shown by Wilkie that the thickness of the lumber was so critical that they offered to send an inspector from Malvern, Arkansas, to inspect the lumber as it was loaded. Dean having informed them that he could cut and ship the lumber without the necessity of such inspector, Wilkie agreed that such might be done. If the thickness of such lumber was of such critical nature, we are unable to understand why they would offer

to send an inspector to Gilmer to inspect the lumber as it was loaded and then to inspect it upon its arrival at his place of business, find it deficient in thickness and absolutely unusable, and still accept it. Percival testified that he did accept the lumber knowing it did not come up to specifications and knowing that he did not have any present use for it. The evidence shows that Wilkie knew about the offer to send an inspector to Gilmer. We think under all the facts in this case that Wilkie was estopped to assert any damages against Dean. We think the case of Seby v. Craven Lumber Co., Tex.Civ. App., 259 S.W. 1093, is directly in point. See also Seay v. Diller, Tex., 16 S.W. 642; Gorham v. Dallas, C. & S. W. Ry. Co., Tex. Civ.App., 106 S.W. 930; Ferguson v. Johnson, Tex.Civ.App., 205 S.W. 512.

Finding no error in the record, the judgment of the trial court is affirmed.