**TEXARKANA BUS COMPANY, Inc.,**
**Appellant,**

v.

**Leslie Earl CARTER, Appellee.**

**No. 6876.**

Court of Civil Appeals of Texas.

Texarkana.

June 14, 1956.

Rehearing Denied July 19, 1956.

Brown & Brown, Texarkana, for appellant.

Harkness & Friedman, Texarkana, for appellee.

DAVIS, Justice.

This suit was instituted in the District Court of Bowie County by plaintiff-appellee against appellant-defendant for injuries allegedly received by appellee on the 14th day of November, 1953, as the result of a motorcycle being driven by appellee, as a policeman, striking a city bus owned and operated by appellant. The collision occurred at a street intersection in the City of Texarkana. Appellee further alleged that he was a "motorcycle policeman riding on authorized emergency vehicle, chasing a

violator of the law," at the time of the collision.

Appellee alleged various acts of negligence not necessary to enumerate, in view of the decision we have reached, and alleged that as a result of the negligence of the agent and employee of appellant, appellee sustained injuries to his back and side which caused him to suffer excruciating pain and agony and that he would continue to suffer such pain in the future, and sought damages in the sum of $20,000. Appellee also alleged medical and doctor bills, but none was proved, no issue was submitted thereon, and the jury was not permitted by the court's charge to take any such medical and doctor bills into consideration in arriving at its verdict.

Appellant leveled numerous special exceptions to appellee's pleadings; alleged contributory negligence on the part of appellee; that appellee ran a red light at the time and place of the collision; that appellee failed to keep a proper lookout at the time and on the occasion in question; that he drove his motorcycle at a dangerous and reckless rate of speed, that: "If appellee was suffering any disability, that it was the result of an injury received in the Navy or elsewhere, and for which he had been under treatment and was not caused by said collision;" and "appellee is still riding said motorcycle as a police officer and has been since shortly after he ran into the side of appellant's bus." Appellant also pleaded unavoidable accident, and a general denial.

Trial was to a jury which answered all special issues in favor of appellee and assessed the damages for appellee's pain and suffering, only, as a result of said collision at $10,000.

■ By Point 37 appellee complains of the action of the trial court in overruling its motion for new trial "because the answer of the jury to Special Issue No. 14 of the court's charge is so against the greater weight and preponderance of the evidence as to be manifestly unjust and clearly wrong." The challenge requires this court to consider and weigh all the evidence in the case, as pointed out in a recent decision, Wilkie v. Dean, Tex.Civ.App., 289 S.W.2d 402, in which we quoted from the case of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661, as follows:

"* * * The question requires the Court of Civil Appeals, in the exercise of its peculiar powers under the constitution and Texas Rules of Civil Procedure Nos. 451, 453, and 455, to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this, regardless of whether the record contains some 'evidence of probative force' in support of the verdict. See cases cited, supra. The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict." See Chantly v. Chrystal, Tex.Civ.App., 274 S.W.2d 765–766, writ dism., and authorities cited therein.

■ We have carefully reviewed all the evidence in this case and have concluded that the point is well taken and must be sustained. In order to clarify our position, Special Issue No. 14, with the court's instructions in connection therewith, is as follows:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will fairly and reasonably compensate the Plaintiff for the injuries, if any, sustained by him as a result of the collision in question?

"Answer by stating the amount.

"Answer: $10,000.00

"To aid you in answering Special Issue No. 14, you are instructed that

you may take into consideration such physical pain, if any, as the Plaintiff has sustained to this time and such physical pain, if any, as he will reasonably and probably suffer in the future as a direct and proximate result of the collision in question. You are further instructed, in this connection, that in answering this issue, you will exclude from your consideration any physical pain, if any, sustained by the Plaintiff to this time, and any physical pain, if any, as he will reasonably and probably suffer in the future as a result of any other injury or physical condition, if any, existing prior to the accident in question, but you may take into consideration such physical pain, if any, as the Plaintiff has sustained to this time and such physical pain, if any, as he will reasonably and probably suffer in the future resulting from aggravation, if any, of any injury or physical condition existing prior to the accident in question, if any, proximately caused Plaintiff (if any you have so found) by the negligence, if any, of the Defendant's bus driver on the occasion in question, as shown by a preponderance of the evidence, but in considering aggravation, if any, of any pre-existing injury or physical condition, if any, you may consider it only to the extent that you may find, from a preponderance of the evidence, that the preexisting injury or physical condition, if any, has been aggravated, and you will not take into consideration any other fact or circumstance of any kind or character."

The evidence offered by appellee shows that on the occasion in question he was pursuing a suspected law violator (a person suspected of illegally transporting liquor, a misdemeanor), and collided with the rear end of a bus of appellant that was crossing a street in front of appellee. He, appellee, was slowing down as fast as possible after he discovered his position of peril, and when he struck the bus he was thrown to the pavement. He suffered minor lacerations of the hands and arms and minor bruises about the knees. He said his right side and back hit the curved end of the back of the bus a glancing blow. He further testified that he sustained an injury to his back while in the Navy in June of 1945, from which he was hospitalized for some two months and for which he drew partial disability benefits until about 1950; he was discharged from the Navy about June, 1946. He said he suffered pain for several years after that injury and was still suffering such pain as late as the year 1952, but that the pain stopped at some time prior to the collision in question, but he could not remember just when it stopped. He testified that he was still suffering pain at the time of the trial of this case in June, 1955, but he did not say whether or not the pain was severe. The evidence shows that he has not lost one penny in salary and wages since the collision, and for a period of about four-and-a-half months he was holding down two jobs at the same time. Further, the evidence does not show that he has lost one wink of sleep in the past from such injury, or that he will likely lose any salary or sleep in the future as a result thereof.

The record reveals that the *first* medical treatment he received was on November 16, 1953, and according to his doctor's testimony, who apparently was testifying from his records, or written notes taken therefrom, said that appellee came to him on November 16, 1953, and reported that he had been involved in the accident in question here on November 12, 1953, and was suffering pain in the back. The doctor made a very limited examination of appellee and recommended heat treatment and rest. Appellee returned to the doctor on November 19, 1953, who advised that appellee return to light work for a couple of weeks, and was then referred by said doctor to Dr. Mary Witt Hughes, an orthopedist. This doctor witness had seen appellee on previous occasions and appellee had reported the injury sustained in the Navy to said doctor who testified that there was some limitation to the motion of the spine as a

probable result of such injury. This doctor observed no bruises on appellee's back after the collision in question and made no X-ray of same. He further testified that if appellee sustained an injury from the collision, it could have aggravated an existing condition and could have reactivated a dormant condition. But, he further testified that if appellee was suffering any pain at the time of the trial, he could not tell from which injury he was suffering. We quote some of his testimony on this question as follows:

"Q. Would it, if it were in the same place, be calculated to be attributed to both injuries? A. It could well be an aggravation of pre-existing injuries or an entirely new one or a combination of the two.

"Q. You don't know which it was? A. There is no way of telling."

Appellee did not produce Dr. Mary Witt Hughes as a witness and the absence of her findings, treatment and opinion as a specialist in the field is unexplained. The testimony further shows that appellee was seen by two other doctors of his choosing in connection with the alleged injuries, and their testimony is absent and unexplained.

On January 1, 1955, only five months before the trial of this case in the court below, appellee made application to the Police Department of Dallas, Texas, for employment as a policeman, and in filling out his application for such employment, the following questions were asked and answers given:

"Q. Have you any physical defect? A. No.

"Q. Have you ever filed for disability compensation? A. No.

In a written physical statement given said Police Department by appellee the following question was asked:

"Q. Have you had any illness, operations, or injuries during the past 10 years? If so, give complete details and dates;".

Immediately following this question, appellee drew two straight lines which would indicate a negative answer. Then, another statement which called for an answer reads as follows:

"Q. I am not now receiving, nor have I ever received disability compensation, except as follows:"

After this, appellee drew two straight lines which would indicate a negative answer. Upon that application and physical statement for employment with the Dallas Police Department, appellee was given a physical examination by two physicians in Dallas. When asked, on direct examination, "Did they examine you?" he answered, "They never touched me." Then he was asked the following questions on direct examination and gave the following answers:

"Q. What kind of examination did they give you? A. Something like in the Army. I would say there was at least thirty men there anyway.

"Q. You took it in Dallas? A. Yes, in the Dallas Health Office. We were all in one room. They lined us up alphabetically. The first thing they did was give us a chest x-ray, which was done by a technician. I believe after that, they gave us all a blood test, and they put us in this one room and told us to take all of our clothes off, side by side. We had space in which to put each of our clothes. The next thing they did was weigh us. I think I was about six pounds overweight. After that, there was a man that tested our eyes. And from there, we went to the doctors' office, standing in line waiting our turn. When I went in the doctor told me to have a seat, and I sat in a chair something like I am sitting in now. The first thing he did was hit me there (indicating), and said what caused that, and I think I said something about being a policeman too long. He checked my ears with a scope and looked in my mouth and

whispered numbers to check my hearing, I suppose. He checked my feet to see if they were flat and hit my knees with a hammer, and told me to stand and bend in a forward position, which I did. He released me and told me to put my clothes on, and if I were accepted I would undergo a final physical examination, and I haven't heard from them since."

It would be physically impossible for a man to be given such an examination as outlined by appellee, without being touched. The doctors who did the examination testified by deposition and their report of the examination is as follows:

"Civil Service Department

Physician's Report

| | | 803 Jerome Street |
|---|---|---|
| Name   Carter, Leslie E. | Address | Texarkana, Texas |
| Department:   Police | Age: 27 · Sex: Male | Color: White |
| Height:  70¾ inches | Weight:  191 | Color Sense:  N |
| Blood Pressure:  Systolic:  140 | Diastolic:  90 | |
| Pulse Rate:  88   Character of Pulse:  Reg. | Tremor:  None. | |
| Glands:  N. | Goiter:  None | |
| Skin:  N. | | |
| Deformities:  None | | |
| Reflexes:  Knee Jerk:  N   Cremasteric:  N   Abdominal:  N | | |
| Head:   Eyes:  N   Ears:  N   Nose:  N   Throat:  N | | |
| Teeth:   OK | | |
| Hearing:  Rt. 15/15 | Left:  15/15 | |
| Far visual acuity:   Rt. 20/20 | Left:  20/20 | |
| Chest X-ray:   59168  Neg. | Expansion:  36–40 | |
| Heart:  N | Lungs:  N | |
| Abdomen:  N | Scars:  None | |
| Hernia:  None | Piles:  ✓ | |
| Extremities:  N | | |
| Spine:  N | Scapula:  N | |
| Blood Serology:  Neg. | | |
| Urinalysis:  Albumen:  Neg.   Sugar:  Neg.   Miscroscopic:  Neg. | | |
| Remarks | | |
| Accepted · ✓   Rejected:   Reason: | | |
| Was he told he would be reconsidered if this condition is corrected? | | |
| Date:  Feb 22 1955   Signed  Dr. Bass   J. C. Strong   M.D." | | |

We have examined the statement of facts in this case several times, and have not found any evidence of probative force that would have the slightest tendency to support such an enormous judgment, and we are convinced, beyond any doubt, that the verdict of the jury is so against the great weight and preponderance of the evidence that it is manifestly unjust and clearly wrong and that the case must be reversed and remanded. In re King's Estate, supra. As a matter of fact, the only testimony and evidence of any probative force that appellee is entitled to any damages for pain and suffering and this, only because of its long duration, which

is grossly overshadowed by the injury sustained in the Navy and the pain therefrom so peculiarly ceasing after so long a time without any evidence of treatment therefor after he left the naval hospital two months after the prior injury.

We recognize the fact that there is no scientific standard of measure for damages for pain and suffering, but we are unable to bring ourselves to believe that a person who has sustained $10,000 in damages for pain and suffering would not have at least lost a wink of sleep and a penny in wages. Point 37 is sustained.

We can not but briefly comment upon the exceptional ability of three of the jurors interrogated upon motion for new trial to forget everything that happened in the jury room during their deliberation. One of the jurors did remember enough to testify as follows:

"Q. And you can't remember anything that took place up there? A. No, sir.

"Q. Did you allow Mr. Carter anything for permanent injuries in this case? A. No, sir, it wasn't mentioned.

"Q. Did you allow him anything for doctor's bills? A. No, sir.

"Q. Did you allow him anything for a brace? A. No, sir.

"Q. Did you allow him anything for pain and suffering? A. No, sir.

"Q. What did you give him $10,000 for then? A. Well, he had it coming.

"Q. For what? A. Well, what did the bus run out in front of him for?"

By appellant's Point No. 38, he complains of the judgment of the trial court as being grossly excessive. What we have said in connection with appellant's Point No. 37 disposes of this point, and we sustain the same.

Appellant brought forward a total of 40 points. We have carefully examined the other points and under the state of the record, find them to be without merit and they are respectfully overruled.

For the errors hereinabove pointed out, the judgment of the trial court is reversed and the cause is remanded.